IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| RANDALL THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of the*<br>*Social Security Administration*,<br><br>Defendant. | MEMORANDUM DECISION<br><br>Case No. 1:13-cv-00034-DBP<br><br>Magistrate Judge Dustin B. Pead |

## I. INTRODUCTION

This matter came before the Court under 28 U.S.C. § 636(c). (Docket No. 9.) Plaintiff appeals the Social Security Commissioner's decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). (Dkt. No. 3.) After considering the parties' briefs, the administrative record, and the relevant law, the Court **REVERSES** and **REMANDS** this matter for further proceedings.

## II. PROCEDURAL HISTORY

On March 28, 2008, Plaintiff protectively filed a Title II DIB and Title XVI SSI application. (Tr. 174-87.) He alleged July 1, 2007 as his disability onset date. (*Id.*) On June 25, 2008, the Commissioner initially denied the application. (*Id.* 86-87.) On October 7, 2008, the

Commissioner denied it upon reconsideration. (Tr. 88-90.) On January 27, 2010, Plaintiff received a hearing before an administrative law judge ("ALJ"). (*Id.* 44-85.) On February 16, 2010, the ALJ issued a decision declining to find Plaintiff disabled. (*Id.* 25-39.) On September 8, 2011, the Appeals Council denied Plaintiff's request for review. (*Id.* 17-19.) This denial made the ALJ's decision the Commissioner's final decision for appeal purposes. 20 C.F.R. § 404.981.

### III. PLAINTIFF'S MEDICAL HISTORY

In February 2004, Plaintiff underwent a lumbar fusion surgery on his L5-S1. (Tr. 417-23.) In May 2006, Dr. Bohus Svagr performed a cervical fusion surgery on Plaintiff's C5-C6. (*Id.* 354.) In April 2008, Svagr performed another cervical fusion surgery on Plaintiff's C5-C7. (*Id.* 294-300.)

In December 2008, Dr. Norman Bos performed carpal tunnel release surgery on Plaintiff's left arm. (*Id.* 502-03.) In March 2009, Bos performed decompression surgery on Plaintiff's right shoulder due to impingement syndrome. (Tr. 498-99.) In June 2009, Bos performed cubital tunnel surgery on Plaintiff's right arm. (*Id.* 496-97.)

In August 2009, doctors performed a brain MRI on Plaintiff due to his increasing headaches. (*Id.* 478-79.) Dr. Michael Williams examined the MRI and noted suspicious white matter lesions. (*Id.* 458-59.) He concluded the lesions were consistent with small vessel disease that would explain Plaintiff's migraines. (Tr. 459.)

### IV. STATEMENT OF RELEVANT LAW

#### A. Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last or be expected to last for twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

**B. Process for Determining Disability Under the Act**

To determine disability, social security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) has a severe impairment, (3) has a severe impairment that meets or medically equals a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work. 20 C.F.R. § 404.1520(a)(4).

**V.     ALJ DECISION**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2007. (Tr. 30.) At step two, the ALJ found Plaintiff suffered the following severe impairments: (1) status post cervical fusion, (2) status post lumbar fusion, (3) right shoulder impairment, (4) headaches, (5) depression, and (6) anxiety. (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment. (*Id.* 31.)

Between steps three and four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with additional limitations. (*Id.* 32-38.) For instance, the ALJ concluded that Plaintiff could only occasionally lift twenty pounds. (Tr. 32.) Plaintiff could sit/stand for two to three hours at a time for a total of six hours in an eight hour workday. (*Id.*) Plaintiff could walk for about six hours in an eight hour workday. (*Id.*) Plaintiff could only occasionally climb stairs, squat, bend, stoop, kneel, push, pull, use foot controls, drive, and reach above the shoulders. (*Id.*) Plaintiff experienced mild limitations in his ability to

concentrate, perform duties within a schedule, sustain routine without supervision, interact with the general public, and deal with stress.  (Tr. 32.)

At step four, the ALJ concluded Plaintiff could not perform past relevant work as a welder, carpenter, or material handler.  (*Id.* 38.)  At step five, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy such as a small products assembler and final assembler.  (*Id.* 38- 39.)

## VI. STANDARD OF REVIEW ON APPEAL

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (quotation omitted).  The court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Id.*

## VII. PLAINTIFF'S APPEAL

On appeal, Plaintiff argues the ALJ made two errors that require remand.  The ALJ failed to properly evaluate the medical opinions in the record.  The ALJ also failed to include all of Plaintiff's established limitations in the RFC assessment.

### A. Whether ALJ Failed to Properly Evaluate Medical Opinions

#### i. *Whether ALJ Erred When Evaluating Treating Physician's Opinion*

On May 26, 2009, Plaintiff's treating physician, Svagr, performed a medical exam and provided a medical opinion. (Tr. 414-15, 491.)  Due to Plaintiff's three fusion surgeries, Svagr opined that Plaintiff could only sit, stand, and walk for three hours in an eight hour workday.

(Tr. 414.) Svagr also opined that Plaintiff's overall impairments would cause him to miss more than four workdays each month. (*Id.* 415.)

The ALJ assigned Svagr's opinion "moderate weight" because he believed Svagr's sit/stand/walk limitations were "not fully supported by his own treatment notes and the medical evidence as a whole." (*Id.* 36-37.) To support this conclusion, the ALJ noted that, between January 2008 and May 26, 2009, Svagr never mentioned Plaintiff's "low back pain in any of his treatment notes . . . ." (*Id.* 37.)

On appeal, Plaintiff argues the ALJ erred when he gave moderate weight to Svagr's opinion because Svagr *did* mention Plaintiff's back problems after January 2008. (Dkt. No. 16 at 12.) For example, Svagr noted Plaintiff's history of back problems in letters from March 2008 and April 2008. (Tr. 317, 334.)

On review, the Court cannot consider as reversible error the ALJ's failure to equate these letters to treatment notes. By their nature, letters qualitatively differ from treatment notes that would contemporaneously record any back complaints. Therefore, the Court concludes that the ALJ did not err when he assigned moderate weight to Svagr's opinion about Plaintiff's sit/stand/walk limitations.

The Court now turns to the ALJ's failure to discuss Svagr's opinion that Plaintiff would miss more than four workdays each month. Plaintiff argues this failure constitutes reversible error because the vocational expert testified that no work would be available to Plaintiff if he missed more than two workdays per month (Tr. 82). (Dkt. No. 16 at 13.)

The Commissioner counters that the ALJ did not err because "it is clear from the ALJ's decision that" he rejected Svagr's opinion about missed workdays where "it was inconsistent

with Plaintiff's daily activities, conservative pain management, and the medical opinions of []
Bos and the [s]tate agency physicians." (Dkt. No. 17 at 15.)

After reviewing the record, the Court concludes that the ALJ never addressed Svagr's opinion about missed workdays much less discussed the opinion within the context of inconsistent evidence. (Dkt. No. 18 at 3.) The Court cannot accept the Commissioner's post-hoc argument that the ALJ implicitly rejected Svagr's opinion because, elsewhere in his decision, the ALJ discussed Plaintiff's living activities, pain management, and medical opinions. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming [a district court's] post-hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

The Court further concludes that, given the vocational expert's testimony, the ALJ's failure to discuss Svagr's opinion about Plaintiff's missed workdays constitutes reversible error. On remand, the ALJ should address Svagr's opinion that Plaintiff would miss more than four workdays per month. The ALJ should then analyze this opinion together with the vocational expert's testimony that all work would be precluded to Plaintiff if he missed more than two workdays per month.

*ii.     Whether ALJ Erred by Giving Great Weight to State Agency Physician Opinions*

Between June 2008 and October 2008, non-examining state agency physicians Lewis Barton, Patricia Truhn, Nancy Cohn, and Dennis Taggart provided medical opinions. (Tr. 367-79, 388-96, 402-03.) Essentially, they concluded that Plaintiff could perform light work. The ALJ gave "great weight" to these opinions because he found the opinions "consistent with the medical evidence that [the physicians] reviewed at that time." (*Id.* 37.)

On appeal, Plaintiff argues that the ALJ erred by giving great weight to these opinions because the state agency physicians did not base their opinions on the total medical evidence. (Dkt. No. 16 at 13.) That is, the state agency physicians rendered their opinions prior to Plaintiff's December 2008 carpal tunnel surgery, his 2009 shoulder surgery, his 2009 cubital tunnel surgery, and the 2009 abnormal brain MRI. (*Id.*)

The Commissioner counters that the ALJ properly assigned great weight to the state agency physician opinions because Bos's subsequent treatment notes support those opinions. (Dkt. No. 17 at 12.) Namely, the Commissioner claims that Bos indicated that Plaintiff's upper extremity impairments improved with surgical treatment. (Tr. 485-86, 492.)

Initially, the Court points out that, in his July 2009 treatment note regarding Plaintiff's cubital tunnel surgery, Bos stated that Plaintiff experienced "discomfort at the insertion of the triceps into the elbow and some limited extension." (Tr. 492.) Moreover, Plaintiff correctly notes that Bos never opined about Plaintiff's abnormal brain MRI. (Dkt. No. 16 at 12.)

Given these circumstances, the Court concludes that the aforementioned state agency physicians rendered their opinions without considering the full medical record. Therefore, the ALJ committed reversible error when he assigned great weight to these essentially incomplete medical opinions. On remand, the ALJ should reconsider the weight he assigned the state agency physician opinions in light of Plaintiff's subsequent medical developments. The ALJ may also consider asking for updated opinions from state agency physicians who will consider all the medical evidence.

**B. Whether ALJ Failed to Assess Plaintiff's Established Limitations in RFC Assessment**

*i. Whether ALJ Erred by Failing to Include Manipulative Limitations in RFC Assessment*

Svagr opined that Plaintiff could never twist, stoop, crouch, or climb ladders. (Tr. 415.) Svagr also opined that Plaintiff's impairments affected his ability to reach, finger, feel, push, and pull. (*Id.*) The ALJ concluded that Svagr's opinion about Plaintiff's "lifting, twisting, stooping, crouching, climbing, and manipulative limitations" was "well supported by his treatment records and the medical record as a whole . . . ." (*Id.* 36.)

On appeal, Plaintiff argues that, despite accepting Svagr's opinion about Plaintiff's manipulative limitations, the ALJ failed to incorporate such limitations into the RFC assessment. (Dkt. No. 16 at 11.) Plaintiff claims this failure constitutes reversible error because both occupations the ALJ identified at step five require the ability to finger and feel. (*Id.*) For instance, a small products assembler must use tweezers or tongs, and he must fasten parts together by hand. *Dictionary of Occupational Titles* ("*DOT*"), 706.684-022, 1991 WL 679050 (assembler, small products I). Similarly, a final assembler assembles optical goods by using small hand tools as well as inserting and tightening screws. *DOT*, 713.687-018, 1991 WL 679271 (final assembler).

After reviewing the evidence, the Court agrees with Plaintiff. The ALJ clearly failed to incorporate Plaintiff's accepted manipulative limitations into the RFC assessment. The ALJ also prevented the vocational expert from addressing these manipulative limitations. He told her that Plaintiff could turn his arms and wrists frequently, open and close his fists frequently, use his hands and fingers frequently, and that he would have normal manual dexterity, fine dexterity,

and grip strength. (Tr. 79.) Therefore, on remand, the ALJ should address Plaintiff's manipulative limitations in the RFC assessment. He should then discuss whether the updated RFC assessment will impact Plaintiff's ability to perform the occupations identified by the vocational expert.

### ii. *Whether ALJ Failed to Properly Assess Plaintiff's Headaches*

The record uncontrovertibly shows that Plaintiff suffered migraine headaches for which he received prescription medication. (Tr. 269-82, 359-60, 458-59, 464-78.) By August 2009, Plaintiff reported that his headaches occurred three times a week. (*Id.* 458.) To treat these headaches, Plaintiff sometimes visited the emergency room to receive Demerol injections. (*Id.*) By January 2010, Plaintiff testified that he got headaches every day that required him to lie down for one-and-a-half to two hours. (*Id.* 62.) Based on this evidence, the ALJ concluded that Plaintiff's headaches constituted a severe impairment. (Tr. 30.)

On appeal, Plaintiff argues that, despite finding Plaintiff's headaches a severe impairment, the ALJ "fail[ed] to explain why there [was] nothing in the RFC assessment to account for limitations such as missed work and extra breaks that . . . [Plaintiff's] headaches would require." (Dkt. No. 16 at 16.) Plaintiff claims this failure requires remand because the vocational expert testified that no work would be available to Plaintiff if he were off-task more than ten percent of the workday. (Tr. 82.)

The Commissioner counters that the ALJ "reasonably accounted for Plaintiff's headache pain" because he "included nonexertional mental limitations, including mild limitations in [Plaintiff's] ability to concentrate, perform duties within a schedule, sustain a routine without supervision, interact with the general public, and deal with stress . . . ." (Dkt. No. 17 at 15.)

After reviewing the record, the Court agrees with Plaintiff that nothing in the ALJ's RFC assessment suggests these mental limitations related to Plaintiff's headaches. (Dkt. No. 18 at 7.) Rather, it appears the mental limitations related to Plaintiff's depression and anxiety. (*Id.*) Therefore, the Court concludes that the ALJ committed reversible error when he failed to account for Plaintiff's headaches in the RFC assessment. On remand, the ALJ should either incorporate Plaintiff's headaches into the RFC assessment, or he should explain why the current RFC assessment adequately accounts for Plaintiff's headaches.

### VIII. ORDERS

For the reasons set forth above, the Court **REVERSES** and **REMANDS** this matter to the Commissioner for further proceedings. The Court expresses no opinion about whether the ALJ's final disability determination will change. However, on remand, the ALJ should address his aforementioned errors, and he should thoroughly and thoughtfully re-evaluate the evidence as instructed above.

Dated this 3rd day of March, 2014.

By the Court:

Dustin B. Pead
United States Magistrate Judge